I'm Duncan Getchell. I'm representing ADMIS. May it please the court, although I do submit that all of our interrelated assignments of error are well taken, in the time I have to address what the district judge called, quote, the most confusing case I've ever had since 1972, end quote, I should begin with the overarching bedrock error, which I contend is present in this case. The district court imposed a settlement bar on summary judgment when the amount of the consideration given on these ADMIS trading losses was a disputed issue of material fact. Voss's case on this proposition is a monstrosity of statutory construction. Looking only at 663-15, Voss says that his release alone raises the bar. He says this ignoring 663-14. Under that section, the bar, which is raised by settlement, is only co-extensive with the consideration paid. And in 1997 and 1994, the special deputy liquidator testified under oath that none of the settlement payment was allocated to the ADMIS claims. And this argument was clearly presented to the district court on multiple occasions. As was the disputed issue of whether or not Voss and the liquidator had engaged in such inequitable conduct with respect to trying to raise the bar of settlement, that they had manipulated the settlement in a way that would give rise to a defense of equitable estoppel. Now, these disputed facts, I contend, clearly entitle ADMIS to reversal and remand. Certainly, there can have been no procedural default as between ADMIS and Voss that would prevent the raising of the issue of whether consideration, in fact, was paid. And indeed, under the statutory architecture, as it stood when this case was decided, because the bar is only co-extensive with the settlement allocated to these claims, and because the latest statement of the other side is simply that these amounts have not been determined, it would seem to me that this case obviously has to go back for something other than summary disposition. Now, wasn't your client, though, previously a judged negligent in the arbitration? Well, I agree that it was. I mean, and if that's the case, then I guess what's your best argument why the Tort Feasers Act should not bar your client from asserting claims against Voss? Well, my point is that whether we're negligent or not, in the first instance, doesn't have anything to do with the Joint Tort Feasers Statute unless they paid money on account of our claims. So we don't even get to the issue of what did or did not get resolved, whether we're collaterally estopped, whether negligence is a defense. None of that even arises until we know whether or not they paid settlement monies on account of these claims, because if they didn't, there's just no bar at all. Now, with respect to the other issues, I submit that you don't have to reach them, but should, because if this goes back for a determination of whether the act applies at all, the court did make errors of pure law which should not be reimposed on a remand. And the first one I'd like to discuss is the fact that we clearly sought common law equitable indemnity, and indemnity is expressly preserved under 63-16. The argument being advanced by the other side is that somehow, although the language simply says indemnity as it stood prior to the adoption of this act, that that excludes equitable indemnity. And indeed, there are several workman's comp cases from Hawaii which recite that indemnity can arise from contract or from other duty. And there's a common law duty with respect to inequitable conduct, and those duties are captured by the various sections of the restatement that we relied on. And although we don't have a case on point, and neither does the other side, we do know that Hawaii tends to follow the second restatement. And so there is absolutely no reason to believe that we don't have an equitable indemnity claim, even if it should develop, that the consideration was properly paid to give rise to the bar at all. Now, we also assert fraud, breach of contract, and of course, contributory negligence can never bar breach of contract, negligent misrepresentation. And again, an argument's being made that negligence bars these claims. But you can't get the negligence to bar these claims unless you collaterally stop modifying based on the proceedings with somebody else entirely involving an entirely different issue. I'm following you here. Why doesn't collateral estoppel apply based on the arbitrator's finding that admiss was negligent? Let me step back. I don't want to overstate. I'm not saying that negligence wasn't involved in that arbitration because it was. But, you know, liquidators get to go to what amounts to shooting fish in a barrel because under the law that was applied to liquidators, they aren't charged with anything that the previous management did. So the determination being made in that arbitration was if you aren't allowed to take into account anything that was done by the by Mr. Vose, were we negligent? Also, remember when when Hawaii did pick up in the exotic states, I think it is. Before you get to the also, I didn't get the first part of your answer. I didn't either. OK. I think there's Nelson asked a simple question which I understood perfectly well. And then you gave an answer which I had no clue what it meant. Well, I apologize. I apologize. May I start again? Please. Because I did not exist. I didn't intend to evade. I remember the question. I do remember the question. OK. So why don't you articulate the question so we know we all. So the question is, why am I not collaterally stopped by the arbitrator's finding of negligence in the arbitration? And my answer is. Simple answer. Give me your best answer. My best answer is that there are a number of factors that have to be reached and found for collateral estoppel to apply. And the first one is identity of issues. So if I'm being tried by a different legal standard in the arbitration, then it is improper to collaterally stop me. That's answer number one. Well, I'm sorry. Isn't negligence negligence? Not if you can consider certain evidence in the arbitration and can consider different evidence at common law. If I appeal to a finder of fact whether or not I was negligent in my relationship with Mr. Bose's former company and I get to tell them what Mr. Bose said and did, then there is absolutely no reason to believe that a finder of fact hearing that different evidence is going to come out the same way. So the first the first requirement for collateral estoppel, even if you eliminate mutuality of persons, is simply not met if I don't get to put on the same evidence in the two proceedings because there is no reason to believe. I've never heard of this requirement. You mean you get to retire a case because you don't like the ruling? I mean, let's say this was an arbitration. This was another state court action. And the judge says, you know, I excise my discretion. I'm going to exclude this evidence because it's too burdensome. You know, it's repetitive, you know, whatever. And, you know, it's a problem appeal. Can you then say, oh, no, you know, I'm not bound by the ruling of negligence because I didn't get to put in all the evidence I wanted? Certainly not. OK, so what's the difference here is that the decision to not let us try Bose was correct under the law. So we have two different legal standards that govern the outcome. I'm sorry. We have two different legal standards governing the outcome. I'm not this is not some discretionary ruling by the arbitrator. It is true that the liquidator takes his claims free of any prior conduct by the prior management, whereas in a common law case, our common law case, we get to explore all the things that were said to us and whether we were reasonable in relying on them under the totality of the evidence. And it seems to me that it is clear that those are not identical legal issues. Well, let me ask you another straightforward question. Does Hawaii law require mutuality of the parties for the application of defensive collateral estoppel? Of defensive collateral estoppel? Exactly. It has does not require mutuality of parties, it seems to me. If we really had the same parties, I mean, I must not follow the question. I'm saying does Hawaii law require mutuality of the parties for defensive collateral estoppel? I think so. What is your authority for that? I don't think it does. And if not, then I don't know why collateral estoppel does not apply in this case. Well, again, I'm not contesting whether or not mutuality of parties is satisfied. You said you didn't have a chance to put on your theories about what Bose did or did not do. But nonetheless, the arbitrator made a finding that was binding. Well, you know, if I got tried under strict liability in California, and you tried to export that judgment and collaterally estop me in Virginia, which doesn't recognize strict liability, I don't think you could do it. Because I don't think there's identity issues. And I think that's exactly the same problem that they have here. Well, don't you also, while we're sort of moving from collateral estoppel to res judicata, don't you also have a problem with the cross claims that were filed against Bose in state court, the one they dismissed with prejudice? Absolutely not. Only the contribution claim was dismissed, and their motion to dismiss all the claims I'm here arguing today are still under a stay order in the state court. So I don't have any final judgment there to appeal. And I've only got a ruling that's consistent with my view of this case, which is if the statute does apply, if the consideration has been paid, then I don't get to denominate something as a claim in contribution. But I don't think I have any risk of a res judicata finding against me. I had thought that this lack of identity of issues was my strongest argument. But let me point out that I have other arguments on collateral estoppel. The offensive use of collateral estoppel is a highly equitable decision to make. And the district court never went through and made the required findings of what you would need to know. Well, let me just ask you one question on that. Would Agnes have any claim against Vose if it were not for the arbitration award? It certainly has been defrauded under our view of the case. There's been a breach of contract. Under the breach of contract claim, there would be nominal damages at a minimum. It is true that there are overlapping damages, but it is not totally because we have claims for expenditures that we were made because of the way we were forced to make, because of the way we were dealt with. But my time is running out. I want to reserve some, but I want to visit a couple of other reasons why collateral estoppel shouldn't be imposed. All right. Go ahead. Nothing in law requires that everything in equity, it seems to me, stands against it. There has been a windfall here to the other side. The procedural devices available in the arbitration were not as good as they would be in a court, and that's something that under Park Lane Hosiery and the Hawaii case is to be taken into account. Whether or not there's a high likelihood that the wrong result was reached is even something that can be reached under Park Lane. And although the other side accused us of making up our citations, I've just reread the transcript of what the judge said. He confirmed the arbitration award, and he repeatedly said that he didn't like the result and thought it was wrong. So you don't have to impose collateral estoppel. It's an equitable decision to make, and I simply assert it would be a highly inequitable result in this case. I'd like to reserve the rest of my time. Okay. Thank you. We'll hear from the other side. Good morning, Your Honor. My name is Howard Schiffman. Sitting at council table is Lyle Pasota, who represents Mr. Vose, and my partner, Jim Wise, who we represent at Pelley Investors Equity Life Insurance Company in Hawaii. I will be arguing today on behalf of both of Pelley's IEL and Mr. Vose. I think it's important to decide what is on appeal and what is not on appeal. First, what is not on appeal? What is not on appeal, and it's the question that this panel first asks, is aren't you negligent? And the answer is that's not on appeal. They have been judged negligent. There was an arbitration. That was appealed to Judge Ezra, who affirmed an arbitration. And then they appealed to the Ninth Circuit, and this panel, this court affirmed that arbitration. So there is no dispute. Not only are they negligent, but the court found there's an essential finding of the negligence, that they knew that the trading was illegal speculative trading of a small insurance company that was trading billions of dollars of financial futures. And their defense was, we thought this was hedging. That was their defense of the arbitration. And the arbitrator said, no, you knew that this trading from the very first day was illegal. And that knowledge. But they pointed out that the arbitration, they liquidated page three and three of any wrongdoing by management. I'm sorry, Your Honor. I didn't hear the question. That any wrongdoing by management couldn't be considered. And that, whether you're negligent or not, could well depend on whether or not the people who dealt with were fraudulent, whether they lied to you and all sorts of things. It looks very different. Right. But I think there's confusing two issues. And this is key to understanding. The arbitrators ruled, as they should have, that the in pari delicto defense isn't a defense. They can't say, whether we're negligent or not, you were also guilty because you're in pari delicto. We didn't stand in the shoes of those. But that misses the point that Judge Nelson asked, which is, they weren't precluded from proving anything. They tried to prove as their defense that they were lied to, that they didn't know the truth, and they were found to have known the truth. The fact that the defense of in pari delicto didn't work has nothing to do with whether they were negligent, whether they knew the true facts. And it was their essential defense in the arbitration was, we didn't know. We didn't know they were speculating. We thought this was hedge trading. And the arbitrators found that the evidence of speculation known to ADMIS, account officer, was immediate, repeated, and overwhelming. And that the trading behavior every day from the opening account to the seizure was obviously speculation. In fact, Judge Andrews says the same thing. And then the Ninth Circuit, when they appeal this issue, this issue of knowledge, the Ninth Circuit, Judge Hugg, Judge Scott, and Judge Wardlaw, who was in this very room, unfortunately for me, or maybe fortunately for me, four years ago. I've now come to Hawaii for ten years as a result of this case. I can't complain about that. They found that the arbitrators found that. So in your heart, you'd rather we reverse. Well, my wife is sitting back there, so she may vote for that. But I'm not going to agree to that. I don't know who's doing that. My wife agrees with you. She's now smiling at the possibility of reversal. The Ninth Circuit found that as a factual matter, ADMIS was aware that IAL's trading in the ADMI account was speculated, not bona fide. That has nothing to do with the imperative ellipto defense. There was no preclusion order at the arbitration. They could have called anybody they wanted to call and introduced any evidence they wanted to enter. And in fact, that was their defense. It was the core issue in the case. Did they in fact call or vote? They did not. They chose not to call him. Chose? Chose. They were free to call any witness they wanted to call. They chose not to. You'd have to ask their trial lawyer why they didn't do that. I can speculate why they didn't. Because they didn't want to be in bed with the arbitrators and Mr. Vose. Mr. Vose wasn't a particularly attractive witness for them. He comes with all sorts of baggage at that time. And so they wanted to try the case in a certain way. They wanted to say we as a broker dealer, we as a CFTC broker dealer, have no duty to monitor the case. We didn't know. That was their defense. They made their own decision. There were no preclusion orders. What Mr. Getchell says is simply untrue. There was nothing to preclude. They chose not to do so. Let me just quickly respond to one or two other points that he makes before I get into my argument. I think it is helpful. Again, Judge Nelson asks the question, is mutuality required under Hawaii law? If you read the Hawaii Supreme Court case, Torrance, it says absolutely no mutuality under collateral estoppel. In fact, the case they cite, which is offensive use of collateral estoppel, the exotics case similarly says there's no mutuality. The suggestion here that they're not departing to the arbitration is pointless. Clearly, this is a case of defensive collateral estoppel. I think we would be entitled to collateral estoppel both offensively and defensively, but we're the classic defensive collateral estoppel. Here, Mr. Vose, a defendant, is being sued by ADMIS. Mr. Vose, as a defendant, says I want to stop you, you plaintiff, I'm a defendant. I want to stop you, plaintiff, from certain facts that you've already lost. That is defensive collateral estoppel. And under the four-part test, which is enumerated by the Hawaii Supreme Court in Torrance and in Morneau, we meet that test. It was the identity of the issue, again, their negligence, their knowledge. Was it critical to the case or central to the case? Clearly, it's the only issue in the case. That was their defense. We're duped. And it's the only issue in this case. They're now suing Mr. Vose, saying you lied to us. You deceived us. The issues are identical. They continue to argue the same facts. I'm sorry. Why are the issues identical? I'm sorry? Why are the issues identical? Because the issue is the same issue. I mean, here, Mr. Vose … He didn't play the fraud. What is the fraud? The fraud is Mr. Vose lied to us. He told us it was hedging when it was really speculation. That was their defense of the arbitration. We thought it was hedging. Mr. Vose told us, and they testified in the arbitration extensively about what Mr. Vose told them and why they … I understand. The lying could be both a basis for a finding of negligence or a defense to commission negligence. It can also independently constitute fraud. You're right. I don't see where resolving one has anything to do with the other. No, but it's the same issue. It's whether Mr. Vose lied to them, and that issue has been resolved and affirmed by Judge Ezra and affirmed by the Ninth Circuit. That's the point. I'm sorry. When was that resolved? I thought you said that they didn't present his evidence. No, that's what they say. I was at the trial, and it's in the record. Their central defense, which the arbitrators found, which Judge Ezra found, and which the Ninth Circuit found, was that they did know. That was the central defense of the arbitration. Remember, what is the arbitration? The arbitration is IEL, a small insurance company, is illegally speculating. It's trading in financial futures, billions of dollars in financial futures, and they're not allowed to do so. ADMIS says, we're just a broker. All we did is execute trades. By the way, we were paid a million dollars in commissions to execute these trades, commissions which were in excess of what the market value was. And we didn't know. We didn't know that it was illegal. We didn't know. And how come we didn't know? Because Mr. Vose, they put in evidence. Their witness is testified. Mr. Vose testified. They testified. They didn't put Mr. Vose on. They did it themselves because he told us it was hedging. That was their core defense. We were duped. And they put that defense in, and that defense was rejected by the arbitrators and said, no, you knew. And I read you the quote from the arbitration panel, and I read you the quote from the Ninth Circuit by Judge Hugg, the ward law, that they did know. So, see, I agree with you. It's the exact same proposition. Did they know? And they've already lost that. And all of their arguments are the same variant on the theme, which is that the arbitration is inherently unfair. We don't like to be in arbitration. They knew what? They knew that the trading was speculative and illegal. Right? The arbitrators found, and this is a quote from the arbitration award, evidence of speculation known to ADMIS account officer was immediate, repeated, and overwhelming. Trading behavior every day from the opening of the account to the seizure was obviously desperate speculation. The Ninth Circuit, in its opinion, affirming the arbitration award, says. I'm sorry. You just read that past me, and it said nothing that supported your assertion. But it said they knew. Say it slowly. All right. And point out to me the words that support what you said. Obviously doesn't mean they knew. Obviously means it's obvious to us. Evidence of speculation known to ADMIS officer was immediate, repeated, and overwhelming. That's the key finding of the arbitration. They knew that there was speculation. Their claim against Mr. Bose today is we didn't know that you, Mr. Bose, and that's why if they know, all of their claims fail. They can't be a fraud. Let's go to that phrase again. All right. Want me to read it again? Yeah. Again. The arbitrators found, and I can read you what the Ninth Circuit found, evidence of speculation known to ADMIS account officer was immediate, repeated, and overwhelming. So what they're saying is there was evidence. What does this qualify as was known? They knew. Their defense to the arbitration. Remember, there's no dispute that trading speculation is illegal. If an insurance company is speculating a financial institution. Is it that they know it's illegal or that they know about the evidence? Again, am I having trouble with that sentence? Try reading it again. Again, what the arbitrations found is that they were negligent. They breached their standard of duty as industry conduct because they knew that the trading was illegal and executed those trades and made a million dollars in commissions as a result of that. And that fact that they knew that the trading was illegal is exactly why they're now counterclaiming against Mr. Bose. Their claim today is you, Mr. Bose, lied to us. Had you not lied to us, we never would have executed your trades. And that's why it's the same issue. It's the issue of their knowledge. Did they know that the trades which they were executing were illegal? Let's say, in fact, Bose did lie to them. Okay. Okay, lied. And, in fact, there was other evidence available that should have or maybe did tell them that Bose's statements were lies. Does that defeat all of their fraud theories? No. If somebody lies to me and says, you know, you buy this piece of land in Florida and it's very nicely situated in the middle of a park, it turns out it's swamp land, right? And then there's evidence people tell me, you know, you really should see that land. It's swamp. You know, you go in there and you will sink into it. Does that relieve the guy who sold me the land making those statements of fraud just because I had information from which I shouldn't have acted on it? If you would let me take your analogy one step further. You go to the land. No, I don't think so. I'd like you to answer my question. Then you can go a step further. The answer to your question is if you don't believe the lie, if you have reason to know the lie is untrue, then you're not the fraud. Reliance is an element of fraud. We don't have evidence. We don't have anything in arbitration that says they knew or believed. All they said is there was evidence. No, no, no. I'm not convinced. The finding is they know. There's no dispute about that. They know that the fraud here rather than the land is nice, the fraud is that the trading is for hedging purposes. And the court, the arbitration said in the Ninth Circuit said. I mean, it's not just the arbitrators. Okay. I'll accept that. I'll accept that. They know. So, so, so, so, you know, the guy tries to sell me land and says all sorts of outrageous lies. And I have this other evidence, which I believe. So I know that he's lying. That relieves him of all liability? Absolutely. Reliance is an essential element of fraud. Of all of the claims that they have. I don't remember what all the theories that they have. Fraud is one of them. There are other. Again, let's go through them. Right. Fraud, reliance would defeat it. Okay. They have equitable theories, which their negligence defeats. For example, they ask for subrogation. The Hawaii Supreme Court has said that subrogation, the party seeking subrogation must not. Subrogation is only available in Hawaii under, I think it's Alameda versus Wilson. Subrogation in Hawaii is only available where the person seeking subrogation is not negligent. So in that claim, and you have to go through each claim one by one. Similarly, in indemnity, under the Hawaii law, you can look at both the Kamali case and the Kiowa case. Again, Hawaii law only permits indemnity for a negligent tortfeasor if it's contractual indemnity. And here there's no claim for contractual indemnity. Hawaii, since 1887, has rejected indemnity between tortfeasors. And in fact, we cite, and in our briefs we cite a whole series of cases on the issue of whether or not, And all of those cases that we cite, the cases from the State of Washington, the Second Circuit decision, the Eleventh Circuit decision, all recognize the principle that where the damages, the only damages that ADMIS has, and I want to get to that because, again, that was one of the questions you all asked, and Judge Nelson also asked, do you have a claim other than the result of the award? And their witnesses admitted, and this was part of the summary judgment record, their CEO testified, and let me just find the site for you, their CEO testified that the only damage that ADMIS had was the cost of the litigation and the payment, the judgment they had to pay, and they had no other damages. The CFO similarly testified at that position that the only damages they had were the damages of paying the arbitration loss. And in fact, had they not had the arbitration, not only did they not have damages, they in fact had made a million dollars in excess commissions. They were ahead a million dollars as a result of doing business with Mr. Bose. My time is running up a little bit, running out, and so I just want to quickly turn to some other points that you haven't addressed. First of all, there is no dispute, Mr. Bose paid $60 million to settle the case. There is no dispute that he followed the procedures of the Hawaii Joint Court Feasor Statute and prepared a release which provided for a settle, that in return for that $60 million, he buys absolute immunity from contribution, and the Hawaii State Court has said so. Judge Milks has ruled that. That issue is not on appeal before this court. What Mr. Getschel just said about allocation is a red herring. First of all, he doesn't have to pay anything for a settlement. We could have entered into a settlement with Mr. Bose, which we would have released our claims against him in return for cooperation, in return for his testimony. He confuses the issue of consideration with the issue of allocation. And in fact, the statute protects him from that, because the statute says to his client, your set-off is equal to the greater of the allocated amount of money, not the consideration, the greater of the allocated amount of money, or the proportionate liability. So the statute protects him if the allocation is unfair. That's the whole point of the statute, is this issue of allocation. He says there's a disputed fact about allocation. The fact of allocation is irrelevant to whether Mr. Bose is entitled to protection, having paid $60 million, and whether it's allocated $60 million to the real estate and zero to the securities claims, or any combination thereof, is irrelevant to the issue of whether or not there's a joint tort fees release. There is. I had a quick question on that. Yes, Your Honor. Obviously, beyond the joint tort fees, I had asked counsel for ADM about the state court action and whether there was any ratio to CATA effect of that regarding Mr. Bose. Did you want to have any response to that? Sure. Two things. First off, I think it is law of the case, and there is a 9th Circuit decision Hangar, H-A-N-G-A-R-T-E-R, versus Provident Light, that says that that's the law of the case. This is the same party, same litigation. That ruling is in effect. Whether it's a final, non-appealable order, it's law of the case. Secondly, it's not an issue which this Court is appeal issue. Whether or not the state court's decision, which is now in effect, which is that the contribution claims are barred, is not on appeal to this Court. And, in fact, why would this Court second-guess the decision of the Hawaii state court judge on an issue of Hawaii law as to what Hawaii would do as to whether or not there was a joint tort fees release. Judge Milks has ruled in this case between these parties, so it's law of the case, that that is done. I mean, we can argue whether or not What happens if that's eventually reversed on appeal? I'm sorry? What happens if that's eventually reversed on appeal? If that decision was reversed on appeal, I guess they would continue with the state court action, which is still pending. I mean, it's purpose of all litigation. I mean, he wants to give permissive effect to the state court judgment. Which is not final. And let's say we do what you tell us, and then later on it turns out that this judgment is reversed by the state appellate court, we would have given purposive effect to a judgment that turns out not to be a judgment at all. First of all, Judge King reviewed the state court decision and said it was absolutely correct. The Judge King in his decision says the state court's decision is absolutely correct. That the release did in fact provide for a set off, and that therefore, and that all the language which was consistent. So I guess if you felt you needed to, you could review that issue. And I think they have no claim why the release is no good. They raise the issue that it's not final, but they have no disputed facts which would cause you to change your ruling. That contribution claims are barred by the Hawaii statute. Because they have a release. They paid 60 million dollars for that release. And all of their evidence about what happened at the arbitration, again is a red herring to Mr. Vose. Mr. Vose, before the arbitration ever is commenced, enters into a settlement. He gets a joint torture release in accord with the statute. Nothing thereafter can affect Mr. Vose. Well, sir, it would be better to, from, safer from your perspective, to find that the Tortfeasor Act, find it on that basis as opposed to race judicata. I'll take you there. Your Honor's time. Thank you, Your Honor. The state court ruling is on a motion to dismiss. It's not a finding that no consideration was paid. The argument advanced there was that because there was a settlement that we had pled that we couldn't seek contribution, but we could seek fraud, breach of contract, indemnity, and all the other claims we're making. So, you know, that's not that's not a determination on this threshold issue whether any consideration was paid. What about what about the argument that there was a determination of non-reliance in the application and that the two withdraw their claims? One, remember, a finding of negligence is not on a state of mind. It's on an objective standard of what a reasonable person would have known. It's not. You're mumbling. I'm sorry. I didn't hear what you said. I'm sorry. Remember, negligence is an issue of what a reasonable man would think, not a finding of our state of mind. There's been no determination of our state of mind. It has some similarity to the issue of reasonable reliance, I suppose, but it's not a determination on that. What about that passage that the counsel read to us? I'm sorry? What about that passage that counsel read to us? They said that there was evidence that should have led us to know that he didn't say should have left. Well, but I made it several times. The word should have isn't. Well, it was known, I think, is what they said. You have the passage. I don't think there's a lot. I don't have the passage in front of me, but I do not believe so. You got the passage. Well, he's looking for. Remember that also we were not able to compel the attendance of Mr. Rose. We didn't have that procedural. Well, that's tough luck. You weren't precluded from from from from presenting as a witness. Well, you just you just couldn't get a hold of him. Well, he's he's that's again an issue under whether you do collateral estoppel, whether we had equal procedural abilities. This is coming to you. Yeah, absolutely. This is just four points. The point is that here's the word. The actual passage. OK. Here, evidence of speculation. No, the evidence is known to administers. Account officer was. So let me read it literally here. Evidence of speculation known to admins account officer was immediate, repeated and overwhelming. The evidence was known to him. There's no finding of fact on our state of mind. And under the only issue submitted to the arbitrators, which is negligence. But if they read the next one, if they know it's speculation, then they could not have relied on on on Rose's statements. Oh, this is OK. This is not speculative. It's fine. No effective inquiry or other response came from admins. Again, there's no finding of state of mind. I don't think there's an identical issue as to whether or not reasonable reliance is totally inconsistent with with negligence. I don't think that it's pretty darn close. It has similarities. But I know of no law that says that negligence is a is a defense per se to fraud. You don't plead it that way. It's not the same issue. But I would like to get back to to also my my threshold issue about consideration, because it is absolutely not true that they could have gotten, given him a release based on cooperation and then barred us. That's their mistake, that the bar comes from the release, which Mr. Vose and the liquidator of ginned up between them. What the statute 663 14 says is a release by the injured person of joint tortfeasors or one joint tortfeasors, whether before or after judgment shall not discharge the other tortfeasors unless the release or release so provide, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the releases or release or in any amount or provide that the total claim shall be reduced if greater than the consideration paid. They only get they only get a bar for what they paid for. And we vigorously disputed with evidence testimony under oath that there was no payment to settle these claims. And that issue shouldn't have been resolved on summary judgment. And if we win it on a contested basis, then there is no bar at all. And we don't have to agonize over whether or not negligence is a defense to this or that, although I have to come back to say that negligence is obviously not a defense to breach of contract, never has been, never will be doctrinal. And I also would commend to your courts, to your all's attention, 883 or 886B of the restatement that we've relied on so heavily, which says ipsy verba that negligence is not a defense to equitable relief under a circumstance where we have been led into exposure to our detriment by the misrepresentations of other people. I believe that we are entitled to have the judgment below reversed and remanded, certainly on the issue of what consideration was paid, but also on the issues of the basic liability questions because negligence is not a defense to all of these claims. And it only arises if you impose collateral stop laws, which under the facts and circumstances of this case I believe is inequitable. Thank you. Case disargued.  Thank you. Roger.
judges: D.W. Nelson, Kozinski, Callahan